Garland, J.
delivered the opinion of the court.
In the month of January, 1836, the plaintiff agreed to sell all his [306] right to the land bade of the eighty a/rpents on which he resided, to the defendant, for fifteen thousand dollars, one third cash, and the other two thirds in two annual instalments, to secure the payment of which the said defendant was to furnish negotiable notes, payable in some bank in New Orleans; a notarial act of sale to be passed at a future period. The defendant took posses-i sion of all the land back of plaintiff’s, and shortly after sold it, with other lands, as the Houma tract, for upwards of $220,000, to Laurent Millaudon, John Slidell, Henry G. Schmidt, Joachim Kohn, Frederick Frey, Charles F. Zimpel, and Henry T. Williams, who are all made defendants to this suit. The defendant never paid the price or gave his notes, and this action is brought to rescind the sale on account of his failure to do so. To this action Bightor, the principal defendant, has made every possible defence, and his conduct evinces a disposition to avail himself of all the benefits of the contract, and not to perform any of the obligations. In his answer he admits the contract, and says he has always been ready to comply with the terms of it, but that the plaintiff is unable to comply with the obligations imposed on him by law as vendor, which he was bound to comply with before he could put him (Bightor) in default. He further says that, at the time of the sale, the property belonged to Madame Maurin, of which fact on the trial he offered no evidence. He also avers the property was subject to various mortgages, that he has sold it to his co-defendants, and they will not pay him, in consequence of a claim set up by John McDonough, to the whole or a part of the *188 land, by which he and they are disquieted in their possession, and fear eviction.
He further avers the plaintiff had brought a suit against him to annul the contract on account of lesion, by which he suffered great damage. He says he has not been legally put in default. Further, that Laville had drawn a draft on him for twelve hundred dollars, which he is legally bound to pay, [307] and also that the plaintiff has not complied with his part of the contract, and cannot make him a good and legal title.
The contract is on file, and we findiin the record an acknowledgment in a letter from Bightor to Laville, dated April 3d, 1838, that he had been previously called on to comply with his contract, and he declined doing so, until the mortgages of Hampton and Dube'rtrand were released. Subsequently, Laville obtained a release of those mortgages, and oil the 23d of August following, he applied to a notary named Pujos, and requested him to write a letter to Bightor, informing him he had obtained a release of the mortgages mentioned and was ready that day or the next to pass him a sale. The witness says he signed the letter as notary, at the request of Laville and left it at Bightor’s domicil. Shortly after, the latter came to his office, asked for Laville, and upon being informed he was not then present, he said he could not be detained, that he would answer him, and asking for writing materials he wrote the following note:
“ Donaldsonville, August 24, 1838.
Ten o’clock.
“ I am here ready to pass the sale, but not finding you ready, I am obliged to leave the town for several days.
(Signed) A. F. Bightob.
“ To M. F. Laville.”
Laville was at the time in the village of Donaldsonville, had called fre- . quently in the course of the morning inquiring for Bightor, and came in a short time after he had left the office. When Bightor went to the office the notary told him he had sent for him to pass the sale, he did not express a wish to have it passed, nor did he inquire for the certificate stating the mortgages were released, which the notary had in his possession.
The first question our attention is called to, is an error apparent on the face of the record, which .is, that no judgment by default has been taken [308] against Williams, and he has not answered. The record shows that Bightor and Williams are residents of the same parish, were included in the same citation and service made on them the same day. On the 9th of October, 1838, it is said on the record, after stating the suit as being against Bightor & al., “ in this case the defendant not appearing and no answer having been filed, judgment by default rendered against defendant.” On the 13th of the same month, Bightor filed his answer and the following entry was made: “ Defendant filing his answer it is ordered that the judgment by default in this case rendered be set aside.” At first, we supposed it was a clerical error, but upon examining the'opinion of the district judge, we find he x-elies upon it particularly as the reason for entering a judgment of nonsuit against the plaintiff and that it is so entered on the minutes of the inferior *189 court. It has been urged that the default may apply to Williams as properly as to Bightor, which is very true, and if there was nothing else in the record we might be disposed so to construe it. But independent of the fact, that whatever judgment by default was rendered has been set aside add annulled, it appears that the legal delay accorded to Williams’s co-defendants, the third possessors of the land, had not expired, and as he and they did not stand in the same position as Bightor did, it is possible the plaintiff.’intended the judgment should only have effect against him, and that he'w’ould join Williams in the judgment he intended to take against Millaudon,’ Kohn and the other defendants; hut as they answered, no default was ever taken afterwards. We have most reluctantly come to this conclusion, as the omission is calculated to delay the administration of justice and increase the costs of the suit, yet the law is so positive, that no final judgment shall be rendered without an answer filed or judgment by default taken, that we cannot resist its command, and it is a matter of some surprise how the district "judge could have rendered a final judgment, and base his opinion on the ground that the issues were not made, and one of the parties not properly before him. As [309] soon as he discovered there was no judgment by default against Williams he should have arrested the proceedings against him and the other third possessors, until the issues were properly joined between them and the plaintiff. The case as to Williams, Millaudon, Slidell, Kohn, Schmidt, Frey and Zimp’el was improperly tried and must he remanded to have the proper issues made up between the parties, but we do not see such a connéetion 'between. Bightor and the ’ other parties as makes it necessary to remand the cáse as to him. Though joined in the suit with the others, he is not a joint obligor with them nor is he liable in the same manner. His responsibility is separate and distinct and a different judgment must he rendered as to him. It is sometimes the case that one action can be maintained against several persons in relation to the same thing or obligation, then- responsibility may be very different— the suit may be tried as to one and continued as to the others.
Before proceeding further in this investigation, it is proper we should examine the contract between Laville and Bightor and understand what was sold and intended to he purchased. The plaintiff says he only sold his right to the land hack of the eighty arpents on which he resided and that the sale does not imply a warranty. The defendant says he purchased the land and that the plaintiff must guarantee the title and the law implies it. The contract does not state where the land is situated, what are the boundaries, the quantity, or any thing else that is certain. “ I sell all my right to the land back of the eighty arpents where I reside.” There is no other description or designation, other than that the sheriff had the whole under seizure. How what' land was sold ? what quantity, and boundaries had it ? What was there to warrant and what is the extent of the .liability? How is it to be ascertained in case of eviction ? The sale appears to he such as is contemplated by the Louisiana Oode, articles 2424, 2425, 2426; and’taken at the peril and risk of the purchaser, according to article 2481, and [310] implies no warranty. The questions of eviction and probable disturbance have no application to this contract. The defendant bought a *190 hope, an expectancy, and must take the consequences of his bargain. The plaintiff does not say the land is his, he only has some indefinite right, but whether a lease, a servitude, a usufruct, or something else, we are in the dark.
The first bill of exception is as to the opinion of the court admitting Pujos to testify that he was the authorized agent of the plaintiff to make the demand on Bightor. Parol proof it is said is inadmissible to prove the agency. Ho legal principle is plainer than the reverse of the proposition. Independent of that, the plaintiff admits Pujos was his agent for the purpose.
The second bill of exception is not more tenable than the first. The second clause of the article 1905 of the Oode prescribes different modes of putting a party in default. One by a suit commenced, the evidence of which is the record. The second, a demand in writing, which may be .made in any form that is intelligible, by a party or his agent, and proof by parol or the written acknowledgment of the party of the delivery or receipt of the demand must be presented. The third is a demand, named by a notary in his official capacity, and the evidence of it is the formal protest. The fourth is the verbal demand in the presence of two witnesses, who must prove it in the ordinary manner. The judge was therefore correct in overruling the objection to the evidence, as Pujos was competent to prove the demand in writing.
The two remaining bills need not be examined as they relate to evidence about th° probability of eviction and disturbance, which is not admissible in this case.
The evidence of having put the party in delay is satisfactory, and the defendant admits in effect in his letters that he had received the written demand. His letter of the 23d of August, 1838, the evidence of the notary, £311] and his whole conduct show it was not his intention to accept a sale, but to rely upon technicalities to delay payment of the price.
The question whether the action can be maintained against the third possessors and Bightor, it is not proper now to decide. We have no doubt it •can be maintained against him alone and judgment be rendered.
The article 2539 of the Oode provides for a dissolution of the sale, if the' -price is not paid, and the evidence in this case clearly shows that not a dollar has been paid on account of it, and we see no sufficient reason for withholding it.
In exercising the discretion vested by the article 2540 of the Oode, we do not think the defendant is entitled to the full delay we are authorized to extend under it.
It is therefore ordered, adjudged and decreed, that the judgment of the district court be annulled and reversed; that the cause as to Williams, Millaudon, Kohn, Schmidt, Slidell, Prey and Zimpel be remanded to the district court to be proceeded in according to law; and proceeding to give such judgment as, in our opinion, ought to have been given in the court below against the defendant, Bightor; it is further ordered and decreed that unless the defendant, Bightor, pay to the plaintiff on or before the first day *191 of June, 184:1, the price of the property sold, to wit, fifteen thousand dollars with interest at five per cent, from the time it was due according to the contract, the contracts of sale entered into between him and the plaintiff on the 12th and 20th days of the month of January, in the year 1886, he rescinded, cancelled and dissolved; and it is further ordered that the defendant, Bightor, pay all the costs that relate to him in this court and the court below, the costs of the other defendants in this court to be paid by the plaintiff and appellant.