that the board did not sell for the highest obtainable price.

The court a qua held that the contract was ultra vires. Relator appealed.

The statutes confer no powers of sale whatever upon the school board. Rev. St. 1870, §§ 2958–2960.

A conditional power of lease is conferred on such board by section 2962. But in the present case the condition precedent has not happened.

With no power to sell or to lease, the board sold to relator at private sale, for $3,000, all the timber on the section. The contract was a sale. It is argued that the board stands in the position of a usufructuary, with the right to gather the natural fruits of the soil.

No such right has been conferred by statute. The board is not the owner, but merely an agent of the state, which holds the title in trust for the school district.

The sixteenth section cannot be sold without the approval of a majority of the legal voters of the township, and the sale must be at public auction. To hold that a parish school board has implied power to sell at private sale or otherwise all the timber on the section, constituting in this and other cases almost the entire value of the tract, would be to nullify the statutes.

Judgment affirmed.

═══

(35 South. 778.)

No. 14,896.

WALLER & EDMONDS v. COCKFIELD.*

(Jan. 4, 1904.)

LANDLORD AND TENANT—LEASE—ACTION FOR
BREACH—DAMAGES—DOCUMEN-
TARY EVIDENCE.

1. This was an action for having violated a contract of lease. The lessor terminated it by going into possession of the property leased without the consent of the lessees and by ordering the lessees to leave.

Defendant did not seek and recover possession in the way pointed out by law. He had not reserved the right to terminate the lease under any reserved privilege. The Supreme Court repeatedly decided that a lessor must resort to the means provided by law to obtain possession of his property, where there is ground to dissolve the lease. Van Wren v. Flynn, 34 La.

*Rehearing denied February 1, 1904.

Ann. 1158; Parker v. McGlin et al., 27 South. 946, 52 La. Ann. 1514.

2. There was no error in ruling that a policy of insurance was the best evidence to prove its different clauses, and not oral testimony.

3. The lessees were entitled to judgment for the amount they would have earned during the remainder of the term of the lease.

4. They are also entitled to damages ex delicto. To the extent that a violation of contract is an act ex delicto, exemplary damages may be recovered.

(Syllabus by the Court.)

Appeal from Eleventh Judicial District Court, Parish of Natchitoches; Charles V. Porter, Judge.

Action by Waller & Edmonds against A. P. Cockfield. Judgment for defendant, and plaintiffs appeal. Affirmed.

Chichester Chaplin & Son, for appellant. Jack & Fleming, for appellees.

BREAUX, J. Plaintiffs and defendant were lessee and lessor. The defendant took the matter of the lease in hand, and brought it to a close by ordering the plaintiffs to discontinue the use of the property leased.

Defendant is appellant from a judgment for plaintiffs in the sum of $422.35 for real and exemplary damages.

Plaintiffs, by answer, join issue on appeal, and ask for an increase of the amount allowed by the district court.

Plaintiffs in the district court claimed a total of $2,211.40, consisting of actual and exemplary damages.

On the 9th day of August, 1902, defendant entered into an agreement and contract of lease by which he leased to plaintiffs a cotton gin on the Typho plantation, in Natchitoches, to the 1st of January, 1903. The lessor bound himself to deliver the property in good repair, and the lessees, on the other hand, agreed to return the property in good repair at the expiration of the lease; the usual wear and tear were excepted.

The lessees agreed to run the gin and pay all expenses. For its use they bound themselves to pay to the lessor one-fourth of the gross receipts of the gin, and lessees bound themselves further to make settlement of receipts once a week, and to keep correct account, subject to inspection of interested parties.

Plaintiffs ran the gin under the contract

without interruption until some time in November within the terms of the lease, which we have seen was to expire on the 1st of January following. They settled at different times, and accounted to defendant for his portion of the receipts at the mill. There were delays in making these settlements beyond the time limit of settlements stipulated in the contract of the lease.

In November, as before mentioned, plaintiffs were informed in terms very positive, through an agent of defendant, that they could not continue to run the gin without an order from defendant, whereupon plaintiffs stopped their work at this gin.

Defendant sought to prove, in order to sustain his action in bringing the lease to an end, that plaintiffs had acquiesced with his views in the matter, that the ginning season was over; that there was a full and final settlement between him and plaintiffs, and that with their consent he went into possession. Defendant also sought to show that he had the right to terminate the lease as he did because plaintiffs' management of the gin was careless, and caused breaks in the machinery; that they worked the gin at night, and thereby exposed his insurance policy to forfeiture; that they had fire in parts of the building where it was dangerous; that there were delays in settling; that the lease was nearly at an end; and that he had the right, under the circumstances, to prohibit plaintiffs from running the gin after the 29th of November.

The record informs us that the plaintiffs are colored men; that they are industrious, and own considerable property, enjoy credit in money matters, and could have been amply able to meet any demand for damages had the defendant sued them and obtained judgment for any damages of the damages which he sought to prove he had incurred before he stopped them as lessees, as before mentioned.

Defendant had not reserved the right to terminate the lease, under any reserved privilege, before the expiration, upon any ground whatever. The lease was entirely silent upon the subject. Plaintiffs were entitled to the quiet enjoyment of the property. The grounds urged were not sufficient to justify defendant in resorting to a prohibition which plaintiffs could not well do otherwise than obey. If there were grounds for damages, and to dissolve the lease at law, there were no grounds to put an end to plaintiffs' possession as lessees, and to interfere with their business as ginners for the public; in fine, to terminate the lease.

The neglect of the lessee to fulfill his engagements may give cause for a dissolution of the lease in the manner expressed concerning contracts in general (Civ. Code, art. 2729); that is, by suit in due form, and not by the arbitrary action of the lessor; that is, he can obtain a decree to. dissolve the lease, but he is not authorized to take the law into his own hands and dissolve it himself.

There is an obligation in every contract of lease to deliver the property to the lessor at the expiration of the lease, but it is an infringement upon personal rights, protected by law, to require a tenant to vacate before expiration.

This court has repeatedly decided that the lessor must resort to the means provided by law to obtain possession of his property where there is ground to dissolve the lease. Thayer v. Littlejohn, 1 Rob. 140; Van Wren v. Flynn, 34 La. Ann. 1158; Enders v. Skannal, 35 La. Ann. 1005; Bonielot v. Block, 44 La. Ann. 515, 10 South. 869; Parker v. McGlin, 52 La. Ann. 1514, 27 South. 946.

In view of the law and interpreting decisions, among the number those cited above, it is difficult to conceive how it would be possible to sanction a lessor's act arbitrarily terminating his lease.

Defendant had not rested his defense exclusively upon the acts of lessees, referred to in the statement of the case, as having put an end to the contract, and as having afforded to him the right of resuming possession. In this connection it is urged by him that plaintiffs consented to the abrogation of the lease. After a careful review of the testimony bearing upon this point, we have not found that this contention of defendant is sustained by the facts. The plea necessarily was defendant's. The onus was with him. It is not sustained by the weight of the testimony. There is nothing in the case which leads to the inference that plaintiffs waived or abandoned their rights under the lease.

An unavoidable submission to an order which must be obeyed is not the approbation

and assent constituting acquiescence to the dissolution of a contract. Lessees submitted to the peremptory direction of defendant. The fact that the cotton ginning season was nearing its close did not give to defendant the color of a right to disturb plaintiffs' possession before the expiration of the lease.

The asserted settlement in question and asserted delays of plaintiffs in paying over amounts to which the defendant was entitled as rental for the gin are not sustained by the weight of the testimony.

Whatever there was worn in the machinery, or any break in any of its parts—a ground urged as justification for dissolving the lease—was not of such importance as to even suggest that defendant's damages before the end of the remaining month of the lease would be irreparable.

The defendant's contention further is that the carelessness and the negligence of the lessees endangered his adjacent property, which he was forced to protect by insurance; that they also exposed his policy of insurance to forfeiture, as, in addition to the foregoing causes for its forfeiture, the plaintiffs ran the gin after night without a permit.

At this point the defendant complains of the ruling of the district court excluding verbal testimony, and its refusal to allow defendant to prove by parol certain warranty clauses in the policy of the insurance. The objection of plaintiffs was that the policy was the best evidence.

Unquestionably the best evidence of the fact was the policy. It was the very act under inquiry, and should have been produced, and its absence could not be supplied by oral testimony of the warranty it was asserted it contained.

It is true, as urged by defendant's counsel, that the validity vel non of the contract was not in question; but the warranty clause of the policy was, and for that reason should have been offered.

The ruling of the district court in this matter presents no ground for reversal.

Having arrived at the conclusion that the testimony was properly rejected, we again take up defendant's contention that he had the right to put an end to the contract for the purpose of reviewing the decisions upon which he bases that contention.

In the first decision cited by defendant's counsel it was stipulated "that, in case the lessee failed to pay two installments of rent, then the lessee was to lose his right." Syllabus, New Orleans v. Camp, 105 La. 288, 29 South. 340. Plaintiffs, by the stipulation, had the right to resume possession. , We have seen that here there was no such stipulation contained in the contract of lease; besides, in the case cited, plaintiffs did not seek possession by forcible means, but by legal means.

In another case, as in the case just mentioned, the litigation was about a lot of ground subject to a ground rent. The plaintiff did not assume to be a law unto himself, but sought the court to have its right passed upon. In still another case cited it was decided that the failure of the lessee to pay the rent authorized the lessor to demand a dissolution of the lease. Demand of the court to be placed in possession. Fox v. McKee, 31 La. Ann. 67.

We must state, before leaving this point, that the testimony has not convinced us, as it did not convince the district judge, who saw and heard the witnesses, that the situation was as extreme in regard to his property as he (defendant) imagined. We are convinced that he was not by any manner or means justified in resorting to the arbitrary method he did to go into possession.

Even defendant admits in his answer that he prohibited plaintiffs from running the gin at or about the 29th day of November, and that they have not run the same since.

This brings us to a consideration of the amount of damages. The ouster resorted to by defendant was illegal, and it was made in such positive terms that plaintiffs could not do less than, as they did, leave and abandon their rights as lessees.

From this point of view they are entitled to judgment for amounts which they would have earned, as made to appear by the testimony, if they had been allowed to continue in their work of running the gin. The medium arrived at in the judgment of the district court has the appearance of fairness.

The highest estimate by witnesses of bales which they would have ginned was fixed at 131 bales, and the lowest at 93. The court fixed it at 83.

Manifestly, plaintiffs sustained a loss. Defendant is liable for an illegal act; in oth-

er words, a tort or wrong, which is the proximate cause of the loss.

The measure of the damages is the loss and the profit of which they have been deprived. Two hundred and twenty-two and $^{50}/_{100}$ dollars, found by the district judge for damages for loss and profit of which plaintiffs were deprived, is, in our view, correct. It is based on the estimate of witnesses. The medium accepted in settling upon the sum due is conservative enough.

We come to exemplary damages—a question which presents some difficulty in deciding. The liability is partly contractual and partly ex delicto. To the extent that it is ex delicto, plaintiffs may recover. We think $200, allowed by the district court, is not excessive for damages under the head of exemplary. We decline to increase the amount, as asked for in the answer to the appeal.

The judgment of the district court will therefore be affirmed.

For these reasons the law and the evidence being with plaintiffs and against defendant, the judgment appealed from is affirmed.